Eastern District of Kentucky
FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

AUG 3 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-384

PAMELA DELUNA,                                                PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Supplemental Security Income (SSI) and Disability

Insurance Benefits (DIB). The case is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or
      mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to Step
      4. If no, the claimant is not disabled. See 20 CFR 404.1520(c),
      404,1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result
      in death or last for a continuous period of at least 12 months?
      If yes, proceed to Step 5. If no, the claimant is not disabled.
      See 20 CFR 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of
      impairments meeting or equaling in severity an impairment listed
      in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of
      Impairments)? If yes, the claimant is disabled. If no, proceed
      to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d),
      416.926(a).

6.    Can the claimant, despite his impairment(s), considering his
      residual functional capacity and the physical and mental
      demands of the work he has done in the past, still perform this
      kind of past relevant work? If yes, the claimant was not
      disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e),
      416.920(e).

7.    Can the claimant, despite his impairment(s), considering his
      residual functional capacity, age, education, and past work
      experience, do other work--i.e., any other substantial gainful
      activity which exists in the national economy? If yes, the
      claimant is not disabled.     See 20 CFR 404.1505(a),
      404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to

the judicial review of administrative agency action apply.        Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at

387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 CFR Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not

3

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

4

Deluna

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the

5

Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Pamela Deluna, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, degenerative joint disease, and fibromyalgia. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 44 years, high school education, and work experience as a receptionist, medical secretary, and census taker could perform any jobs if she were limited to "light" level exertion, needed to alternate sitting and standing at 30 minute intervals, and needed to avoid work requiring repetitive fine manipulation or keyboarding. (Tr. 442). The VE responded that there were jobs that such a person

could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 443).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The plaintiff alleged disability due to chronic pain in her hands and feet, and also described continuous pains in her legs, hips, arms, neck, and shoulders. (Tr. 95, 414, 419, 427).

Although the medical evidence reflects treatment from a number of different general practitioners and specialists, and temporary opinions of "disability" were given by some of the sources, no treating or examining physician listed specific functional restrictions, and state agency reviewers did not list functional restrictions, either. Thus, substantial evidence supports the administrative decision.

The plaintiff was treated by Dr. Dennis Piccone on two occasions after her alleged onset date of January 30, 2003 (Tr. 95) for complaints of foot and leg pain as well as a lump on the left hip (Tr. 181). However, an electrophysiologic evaluation did not show any evidence of neuropathy, myopathy, or radiculopathy. (Tr. 187-9). Dr. Piccone also noted scoliosis, based on x-ray showing "moderate" dorsolumbar scoliosis (Tr. 198) and myalgias/arthralgias. (Tr. 180). He provided the plaintiff an excuse from work for the period January 30 to March 30, 2003, but this note also stated that the plaintiff could return to work without restrictions on March 31, 2003, and Dr. Piccone declined to extend the disability period after she failed to appear at an appointment. (Tr. 201, 325).[1]

_____

[1]The plaintiff was also excused from heavy lifting for two weeks after undergoing a total hysterectomy in August, 2003. (Tr. 213).

7

Dr. J. Pampati, a rheumatologist, treated the plaintiff from September to December, 2003, and found a normal neurological evaluation and "minimal" synovial thickening of the wrist. (Tr. 242-3). She assessed diffuse arthralgias suggestive of inflammatory arthritis, and obtained laboratory testing showing an elevated rheumatoid arthritis factor and elevated C-reactive proteins. (Tr. 251). An MRI of the lumbosacral spine was interpreted to showing mild dehydration at the L1 to L5 levels. (Tr. 247). However, Dr. Pampati described the rheumatoid arthritis factor as "low," and the C-reactive proteins as "mild." (Tr. 239). She proceeded to treat the plaintiff with steroids, but these were of minimal benefit. (Id.). Her examination in November, 2003 showed only a mildly decreased grip, negative Tinel's and Phalen's tests, and some tenderness over the ulnar nerve near the elbow. (Id.). Otherwise, there was no synovitis of the peripheral joints. Dr. Pampati described the MRI as showing degenerative disc disease with no evidence of herniation, and noted that a previous bone scan was within normal limits. (Id.). She diagnosed diffuse arthralgias with no definite evidence of acute or inflammatory arthritis, and bilateral carpal tunnel syndrome. (Id.). On October 15, 2003, Dr. Pampati noted that the plaintiff "feels she is not able to work," but based on "what [the] patient has [I] can't give a certificate of disability." (Tr. 240). On November 17, 2003, however, Dr. Pampati addressed a letter "to whom it may concern" stating that the patient was "totally incapacitated for six months." (Tr. 238). Reference was made to an NCV which showed evidence of neurological deficit, but final results were not available for review to her at that time. (Tr. 236, 246). The physician stated that her findings on physical examination were unchanged, and she would give "temporary disability" until further evaluation. No

8

specific functional capacity was provided, and it did not appear that the plaintiff continued treatment at the source.

Dr. Peter Rock, a family physician, also treated the plaintiff in 2003 and 2004, and referred the patient to several specialists at her request. (Tr. 316). His physical findings were largely limited to notations of pain on range of motion testing, but he commented on February 4, 2004 that, although the plaintiff probably had some element of arthritis, "none of the other test[s] showed a lot except for some back problems." (Tr. 315). Nevertheless, he provided the plaintiff a letter stating that she had chronic pain and arthritis problems and should be considered "at least totally disabled" for the next four months. (Tr. 261, 315).

Dr. John Gilbert, a neurosurgeon, treated the plaintiff on several occasions beginning in December, 2003, and found a decreased lumbar range of motion and positive straight leg raising on the right. (Tr. 303). He obtained MRIs showing small herniations in the cervical spine, and degenerative changes in the lumbar spine with a small herniation at L1-2. (Tr. 301, 308). He scheduled lumbar epidural steroid injections and proposed physical therapy. (Tr. 301). However, the plaintiff testified that she received only one injection in her hip, but did not like the way he she was treated at his office and apparently did not continue treatment. (Tr. 420-1).

Dr. Rock also referred his patient to Dr. Alam Khan, a pain specialist. She described being sensitive and sore to touch all over her body. (Tr. 320). Dr. Khan's physical examination showed the plaintiff to be in no apparent distress, with normal strength and equal reflexes, as well as a normal gait, but he did find positive Tinel's sign in both hands. (Tr. 320-1). He stated that the plaintiff had subjective pain all over her body without definite objective evidence of any central or peripheral nervous

9

system finding, and additional testing was needed, including an MRI to rule out multiple sclerosis. (Tr. 321). However, the testing was "nonspecific" for MS. (Tr. 318, 323). Dr. Khan assessed "possible" fibromyalgia and suggested a need for long-term pain control including behavioral and biofeedback treatment from a psychiatrist or a pain clinic. (Tr. 319). He prescribed medications including Seroquel and Klonopin, which the plaintiff described as helpful. (Tr. 318-19, 423). No functional restrictions were suggested.

The ALJ rejected the opinions of disability from the treating sources, on the grounds that they were not supported by objective findings. Although the plaintiff disputes this conclusion on appeal, the opinion of Dr. Piccone does not appear to be supported by objective findings, in addition to which the plaintiff testified that the physician had written the excuse because she "told him I couldn't go back." (Tr. 417). Dr. Pampati's disability opinion was reportedly intended to be "temporary" pending further evaluation, which was not obtained. Her description of the plaintiff's serologic testing was that abnormalities were only mild and, although the plaintiff had positive NCV testing, indicating radiculopathy at the level of C7-C8 (Tr. 246), it is not clear that such finding would equate to total disability. Dr. Rock, as previously noted, found few abnormalities on examination, and indicated that most of the plaintiff's testing had not shown "a lot." (Tr. 315). Additionally, all of these opinions represent vocational conclusions outside the physicians' area of expertise. Under the circumstances, the ALJ could reasonably have accepted the opinion of state agency reviewing sources that the plaintiff did not meet the durational requirements for disability. (Tr. 294-7). However, he gave the plaintiff the benefit of the doubt in finding that she could not return to her past work and would be limited in her exertional level and ability to

10

Deluna

tolerate prolonged sitting or standing and in her ability to perform fine manipulation

or keyboarding.

The decision will be affirmed.

This the ___3/___ day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11